Mr. Hall. Yes sir, your honor. Good morning. May it please the court. I'm Stephen Hall with law firm of Baker Donaldson. I'm representing Ken and Anita Brooks. Dr. Brooks is here with us. This is a conservation easement case as the court is aware. We are asking that the case be reversed in its entirety and it be returned to the tax court for evaluation under the appropriate rules and law. I want to give a really brief background on some of this and then jump into specifically the errors that we see. Congress has been encouraging conservation easements for 50 years. It's a phenomenal program. It has resulted in tens of millions of acres of land being conserved. The government doesn't have to pay for it. It's just as good as it gets. There have been fraud and abuse problems in the conservation easement program. There's no question about it. The IRS has taken it upon itself to try to prevent this fraud that's out there. However, the IRS has very limited tools at its disposal. It has enforcement actions. That's what it can do. And if you're a hammer, everything that's out there looks like a nail. The problem is that if you let the IRS go too far with what it's doing to push these enforcement actions, then you undermine the program that Congress finds so important and wants to keep in place. I appreciate that background. Let me ask a question. You have challenges, I think, three to the disallowance decision. And then you have a challenge to the valuation decision. This is just hypothetically. Assume you lose on the valuation issue. Do the disallowance issues make any difference at that point? I think practically to our case, your honor, it would not make a difference. If we lose on the valuation issue, I think the valuation issue carries it as to the tax. I mean, it may make some small difference in what it would make a difference depending upon how it came out in the amount of the tax. But I believe your honor... That's what I was getting at because it looks like the And I would think the 40%, again, hypothetically, if that's upheld, I may be wrong here, would apply to the amount of the underpayment. And that may be here one in the same because you're in the carryover time. Is that the situation? I believe that's correct. Okay. Now, let me spring from that then, your honor, into the valuation issue because I actually think this is a really good issue. And in thinking it through, I decided to reorganize my argument on this and put this first. Here's the problem with the valuation issue. And we understand that typically, valuation is going to be a matter of discretion. The trial court's going to be afforded discretion, typically. It saw the witness, it did this, that, and the other. That makes sense most of the time. We do not see this as a credibility issue in valuation. We see it as a What are you seeking with respect to the valuation issue? Absolutely. We are seeking that it be re-sent back down, your honor, to be revalued. And here's the methodology involved. You want the valuation issue sent back? Correct. Correct, your honor. We think that has to happen. Even if the even if you were... Let me just say, why would we send it back? Because the valuation issue would seem to be within the province of the tax court. And the tax court had experts on both sides with respect to the valuation issue. And there's a lot of testimony as to what uses the property could be put to and whether it really had the potential to become any kind of an attractive resort area. And they went back and forth. And after the battle of the experts, the tax court came to a judgment on a particular figure. And why wouldn't that figure be subject to a deferential review on appeal? Absolutely the figure was based on an illegal and inappropriate methodology. What the law says, and we've outlined this in our brief, is you must go look at the property that the easement is on. You must value it based upon its highest and best use. Everybody agrees with that throughout. Everybody did the trial court. The experts agreed that the highest and best use of this property was as a residential subdivision. What happened is our expert compared residential subdivision to residential subdivision. He did it on an income-based approach. The IRS's expert compared residential subdivision to timber. That is akin to saying, I'm going to value your classic 1970s Ferrari by comparing it to a 1976 Toyota Corolla. It can't be done. The Novo review under the Waterman case... So the property as it is is undeveloped. Correct. And I understand your disagreements with the IRS's evaluation, but it seems to me if you agree that the highest and best use is residential and you're comparing... The IRS's expert compared what it thought was the proper residential value with the property as it is pre-development, which is, isn't that what they did? That's what it is now, right? It's not developed. That's exactly the error, your honor. You are under the rules. They were not allowed to say we're going to value it as it is now. You have to value it. This goes back to the Mitchell case we've cited. It's a 1924 U.S. Supreme Court decision. What is the regulation that you contend is applicable? I want to know the regulation. I want to know the statutory authority. This is what we're dealing with, your honor, here is 170. It's the charitable contribution. 26 U.S. 170. And what it says is you need to value the charitable contribution and then what has happened is the case law that has developed. It's not just particular to charitable contributions. The case law that has developed is that you must value the highest and best use of the property. Is that said in the regulation? That's in the case law. No, I know, but the regulation just seems to talk or the I think everybody in all of these cases so far has believed it is highest and best use that you know but highest and best used way you teach seem to be using it is you can speculate about changes in zoning and procedures and the possibility I mean there are only two houses in this particular area and you are assuming that there's going to be big land rush and you have million-dollar houses and they're not fully developed and there's no evidence to support any of that and they the I mean this man who bought the property for roughly six hundred fifty thousand a year before and then one year later claimed 5.1 million that's that's I assume he bought it at the market value there's nothing to actually I can answer both of those. I don't know, it's not in the record. I understand. Let me give you an example. Six months ago in Virginia, the company bought a piece of property for a dollar, found helium on it, it's now worth 5 billion dollars. I understand, we don't have any helium on it. We don't have any oil on it, we don't have any gold on it. It's the same land a year later. No market changes that are indicated in the record. Actually, no, there are, your honor. What happened was this was sold as one farm. What subsequently happened is after my client bought it, he got the permission to subdivide. The lots that were going in this Campton Island development were selling for between a hundred and fifty thousand and up to a million dollars for a lot, for an acre lot. So it was there and what happened when the IRS compared this, it compared it to Timberland, which never gets higher than about fifteen hundred dollars per acre. So what it was when you took an apples to oranges comparison, it fundamentally undermined the valuation. I don't understand that at all. The conservation easement is to preclude, is to conserve it, to preclude development of it. And the way the IRS works, as I understood it, and please correct me if I'm not understanding this right, when done correctly, you do get a deduction for the value that you give up. Yes. But, you know, there can be a question of whether the value, what it is, but I would, I would, it seems at least logical, maybe, maybe the caseload is different than this, that if you're giving up the development, the proper comparison is what it was undeveloped. Why would, why would, I mean, that I don't know. Yes, yes, yes, yes, that's exactly it, your honor. The citation I was looking for is Mitchell versus the United States. It's 267 U.S. 341 to 1925 decision. It stands for the proposition, exactly what you're talking about, that you don't value it in its current condition. You value it according to what its highest and best use might be. So let me give an example of that. Let's say we've got a vacant lot over here. We're in downtown Richmond. The phrases that you're using about highest and best use, the highest and best use that you posit is so highly speculative. I mean, because it isn't clear that this land is at all suitable for a nice resort. But one of the first problems you have is simply the lack of major access roads onto the particular piece of property. And I mean, the developing of a resort that's going to be at all competitive with other resorts, or that has a chance of attracting not only tourists, but vacationers on a wide scale, an awful lot of things have to fall into place. And the resort environment is a very competitive environment. But it seems to me that in South Carolina and all throughout the East Coast, vacationers and tourists have a heck of a lot of options. And to have a new development actually break in to that very competitive and crowded market in a way that's profitable and produces a dependable revenue stream would seem to be, on the face of it, very questionable. Well, and Your Honor, that was addressed in the record below. The reason it was addressed in the record below was that both experts agreed that this was the highest and best use. And that agreement carries with it, it is feasible, it can happen, it is likely to happen. But there has to be a certain plausibility to that. That's inherent in it. Otherwise, it's not the highest and best use, Your Honor. By the IRS's expert conceding that this is the highest and best use, he necessarily conceded that it was plausible and it could happen and eliminated all of that. So let me give you the example. If we decide that this lot right here, highest and best use is a skyscraper. Let's say I own it right now and I decide I'm going to put a conservation easement on it. I could have sold this lot to skyscraper developer company for $10 million. Let's call it that hypothetically. But if I put my conservation easement on it and I say it's got to remain this pretty grass from here on out. No, but didn't you have to convince the tax court that you talk about highest and best use, but isn't the real question is, are you giving up a viable business opportunity? And that would seem to be inherent in the whole concept of highest and best use. And it's hard. It was hard to convince the tax court that this was a viable business opportunity. It had all sorts of problems in light of the terrain and the piece of property itself. And then you get to the additional difficulty of the market that it's trying to break into. And you get the idea that using this as a resort is just a bit dreamy. If I may, I see I'm out of my time, but I would respond to that by this. One of the errors the tax court made along the lines of what you're saying is that it opened up that inquiry into probability that it will be developed as a residential subdivision when all experts in the IRS position had already conceded that that was the highest and best use. So that was already done. There was no room for the, we can argue about what the value of that subdivision was, but there was no room for the tax court based on the IRS's admissions to come in and say that's not going to be developed. And that was an error in the whole thing. Let's hear from you then, in rebuttal. Let's hear what you have to say. by absorption of the actual value of the easement by the amounts of deductions already taken, which are time barred and not at issue in this case. I'm happy to speak to any of the legal grounds on the deduction, but I see that the court has focused on valuation and I'll direct my remarks there to start. The agreement between the parties that the highest and best use for valuation purposes is residential does not imply any certainty. There is an element of speculation, as the court has observed, in any evaluation and particularly in the context of the donation of a conservation easement, where what you are valuing is the rights you have foregone, which are necessarily speculative. Even if you say the best thing I ever could have done with this property was if all of these tumblers aligned and it came to pass that I could develop it into the development of my dreams. As a general matter, we find ourselves at an odd juncture here because Congress has provided for these charitable deductions for conservation easements and for deductions for pictures given to art museums and the like. They may seem to be loopholes in everything, but Congress has provided for them and yet the IRS audits these kinds of things with a vengeance. I grant you that they're subject to gross abuse. I know all the ways that because people to take advantage of the induction have all kinds of ingenious schemes for inflated value and inflated assessments and sometimes they don't even bother to get assessments. They just put down an inflated value, so I understand you're part of it, but on the other hand, and I'm not sure this is a play here because this individual's case was just not carefully documented. I mean, it just was sloppy documentation, but I wonder if this aggressive auditing behavior on your part is almost essentially nullifying the deduction where people are just afraid of it because they know that if they try to claim a conservation easement or a deduction for a gift to a museum or something, the IRS is going to be on top of them for the next however many years and so you can use your auditing authority to essentially void the statute. I know you don't agree with me, but I'm wanting to know why that isn't a danger, not particularly in this case because this may be an extreme example of abuse, but I'm talking about generally. This raises so many flags at the IRS, whether it's legitimate or not. I mean, people can pay for appraisals. They can have three appraisals and you're still going to audit it. Go ahead. Every taxpayer who files a return plays the audit lottery. Any one of us could be audited at any time. The red flags of transactions that are likely to be abused are generally paid greater scrutiny and legitimate deductions survive. We would note here that at trial, the government expert did not take the position that this was a fraudulent or a worthless deduction. The position that the government took at trial was that this deduction was worth $470,000 and that taxpayers would have been entitled to a deduction in that amount had they documented the transaction properly. As Your Honor observes, they have not. Counsel, let me follow up on that. I can appreciate that the valuation issue is something that people fight over. You have experts and I know there's a legal argument, but generally a fact finder has discretion there. It may not matter here. It sounds like it's not because of how the statute is or what we're dealing with here, the carryover amounts. But on the disallowance provision, just start with the contemporaneous written acknowledgment. The IRS has said these can suffice. And then it looks at language that says what the consideration is and says we're not going to consider it because it's boilerplate. But then it will consider it if there's a boilerplate integration clause. And it will consider it if there's a boilerplate document that uses magic words. The tax court says the consideration contained herein doesn't necessarily mean exclusively herein. That seems like hyper-technical analysis that does a lot like Judge Wilkinson's talking about. We're going to foreclose almost the possibility of doing this. It sounds like those errors may not matter here because if we affirm on valuation, the disallowance decision really has no effect in this particular case. But I'll be honest. The disallowance decision from the tax court seems as hyper-technical as one could get. It doesn't even consider the reasonable cause defense that Brooks has put out. On the substantial compliance, it uses a standard at odds with our Volvo trucks decision. It seems like there's, to me, some real problems with the disallowance decision. And it just so happens that right here it may not matter. But I think this case does present some of the issues that Judge Wilkinson talks about in terms of dangers. I would respond that careful documentation can avert those dangers. And that if you're relying on your deed to represent your contemporaneous written acknowledgement rather than an actual receipt from a donee for a charitable contribution, then there are ways that you can make sure that your deed correctly recites the items that the statute requires. And you don't need to resort to canons of construction to get you there. And when you do, you do get into the weeds. And that can create issues. But if you're concerned about a chilling effect... Isn't it correct that if they had, based on other tax court decisions, that if they had had an integration clause, this would be okay? The court did so hope, yes. That if there had been... And I want to speak to your Honor's point about how some boilerplate is valid and some boilerplate is not. I think some boilerplate is meaningful. And others, the tax court lease found here is less so. The $10 and other valuable consideration doesn't tell you what actually was conveyed. It's basically a placeholder. And there's usually additional discussion of consideration. And in a deed, you see the meets and backs. And the county could well have said, we're going to forgive taxes on your remaining property for 10 years in lieu of this donation. And that would not be unusual. Quite possibly, your Honor. Or there could have been a verbal agreement with regard to a zoning variance. We don't know. And we can't discern that from a deed that doesn't plug the hole and say this is the entire agreement of the parties. That boilerplate has meaning here. The fact that it follows standard language does not deprive it of that meaning. Are you seeking an affirmance here based on the grossly inflated valuation that was claimed initially and then they came off of it, I guess, to avoid the penalties that attach to grossly inflated valuations? There are two problems, as I see it, from Mr. Brooks's quarter. One is the grossly inflated valuation, which they realize was grossly inflated. And they kept trying to nose it down so that it wouldn't put them in a heightened penalty, subject to a heightened penalty. That's one problem from Mr. Brooks. The other problem is that the documentation here was about as threadbare and sloppy as you could possibly imagine. Questions about the correct basis for it, questions about the baseline documentations. And one that struck me as odd, given the fact that we've been discussing that the IRS is almost certain to audit this kind of transaction. It seems to me, I mean, why wouldn't somebody recognizing that be super careful with the documentation? So when the auditor comes around and says, look, I've had real estate appraisals here before we did anything. And here's what the appraisers evaluated. And we didn't claim anything excessive. And here are the records of the appraisal. And that's not there. And then you ask, well, was there consideration given to Mr. Brooks in return for the donation to Liberty County? You know, I think when we give $20 to the school that we went to or we give $100 to our church or whatever, you routinely get a letter saying no goods or services have been granted in receipt in return for this donation. And if we're going to itemize rather than take a standard deduction, you're going to keep those things on file, every one of them that says that no goods or services were received. And yet, that wasn't even there. And that doesn't take a sophisticated person. I mean, the person that makes a modest gift knows that. And so it just seemed to me to be inconceivable that that wouldn't be part of the file that was handed over. I mean, I don't get it particularly because you just know, you know, the tax man comments, the auditor is out there. So, on the one hand, it annoys me that the IRS over audits this particular area. And on the other hand, the abuses here in terms of the valuation that was proffered and in terms of the documentation that was provided were really egregious. They were egregious, both. So, are you seeking the affirmance based on the highly inflated evaluation or the absence of documentation for anything they were doing? Which one? The answer to that either or question is yes. What's that? Both. Either. Okay. This court can affirm on any basis in the record. And we do submit that any of the three legal bases for disallowance of the deduction are sufficient for affirmance. We certainly submit that the misvaluation penalty is appropriate in these circumstances. And the tax court correctly found that the IRS expert was credible that the actual value of the donated easement was a fraction of the amounts claimed by the taxpayers on their return, let alone proved at trial, which they walked it back as we observe. We would suggest that in the case where there were not such a gross misvaluation statement, we would be more mindful of the degree to which your concern, as I understand it, is that the gross misvaluation is the red flag that draws the eyes of the IRS. Do you think that Mr. Brooks actually did receive some sort of consideration for the donations in terms of zoning or taxes or whatever for the other piece of the property? The county was in a position to grant some nice little bonbons and favors in return for the donation. So do you think that there was consideration of some sort provided by the county in return for the donation? Or do we just not know? We have trial testimony that there was none. We have trial testimony that there was not. But what we did not have at the time of the return was the written acknowledgment that there was none. And that's what the statute requires. And the statute requires that because every one of these can't go to trial. The IRS is not placed on inquiry notice by the filing of a tax return that it will need to conduct a trial before a finder of fact. It wants to believe what it is told. The taxpayer has the obligation to candidly report these items. There was a letter from the county from a gentleman who told Brooks that they could build on two acre sites while the county zoning required five acre sites. Your Honor, I believe the letter you're referring to was not from the county, but was from the president of the adjacent development, in which that gentleman agreed not to impede the application of the Brooks property for entry into the plan. So there's no suggestion that the county participated in that letter? There is no suggestion. So the county zoning was five acres, right? That is my understanding. Counsel, let me ask about a specific issue, and it's the baseline determination issue. One of the issues that's raised was the county's acknowledgment. And I think the language is that the county stamped on, or maybe it was a separate piece of paper, I can't recall exactly, but it cited the particular reg and said we're familiar with the property. And I think the IRS has a Carter decision that indicates that county's acknowledgment can be kind of satisfactory of that obligation. Is it the IRS's position that this is different than Carter based on the language of the acknowledgment, or some other reason? So the IRS did not take the position at trial, the government does not now take the position, that the county acknowledgment was insufficient. What we are looking at is what is provided to the county? What are they advised of the state or condition or meets and bounds and geography of the property so that they can be aware if the taxpayers in exercising the substantial rights that they have reserved in the property are... I understand your argument that they didn't get enough information. But what I'm trying to figure out from Carter, if the government says that it is satisfied from a documented... Excuse me? I beg your pardon, Your Honor. The county government, sorry. If they make that sort of acknowledgment that the county government is satisfied, Carter seemed to indicate that suffice under this particular issue. And maybe I'm misreading that, or maybe the acknowledgment language here is somehow different or insufficient. But can you answer that question, please? We do not read Carter to incorporate the county's assent to the sufficiency of documentation to remedy defects in that documentation. The documentation itself, not the county's subjective knowledge, or any of the county's subjective knowledge, needs to establish the condition... So the county can say, hey, I'm good. I got enough information to make sure this particular regulation is complied with. I'm familiar with it. I'm citing the reg and whatever. And the IRS can say, come in and say, no, you really don't need to know that. You need to know more. It's not simply the IRS that's saying that, Your Honor. In this case, the donee is a county. But in other cases, donees are organizations and may have successors and may convey their property right, the easement, to some third party who doesn't have that subjective knowledge. And sufficiency at the time of the grant does not guarantee permanent sufficiency. And these need to be protected in perpetuity, these easements. So if the successor to, and in this case it's the county, but if the successor to a donee receives an easement title, a conveyance of that property right, they also need to be able to look at the baseline documentation, which even if the initial donee found sufficient based on their subjective knowledge, the successor donee may not. If you know where the gravel pit is on the property when the easement is donated to you and you're okay with that, that does not excuse the absence of the gravel pit from any maps of the property, particularly since any of your successors who could accede to these property rights also don't know about the gravel pit. So if there is any disruption of the conservation interests, let's say that gravel pit contains an endangered species in the water or in the wetlands, a bird or a fish, this is why conservation easements are a good thing. They are to protect the natural environment. And if the natural environment is misrepresented in the documents, the fact that the original donee knows the actual state of it does not excuse inadequacy in the documents. What concerns me, I think, I've expressed my concerns that the IRS is over auditing these things, but I take your point that if we allowed something, representations that were this skimpy and this threadbare to claim the full value or substantial part of the value of the charitable deduction, what we would essentially be saying is that the taxpayer, notwithstanding the regulations and statute, has to do practically nothing and that the IRS is required to accept whatever conclusory assertions are made at face value. And this case is not a close case in terms of the absence of documentation. It's just not. It's not just one point or two point with three or four missing ingredients here that would lead to a proper assessment of what this valuation, what this was all about. And if we reverse the tax court here, we would essentially be off to the races in terms of these deductions. But you might just think about and I'm sure you contend that you do, but you might just think about taking a measured approach to auditing these these kind of situations. And don't drive good faith donors to distraction. The IRS auditors can make people miserable for a period of years. You know, Congress is sensitive to that. And so just all I can say is this is an extreme case. And there was just these claims of substantial compliance. And I wonder, was there ever actual compliance? It's always substantial compliance, which wasn't present. But I just hope that people who are actually generous with their land, with their property, with their artistic possession, are not driven to distraction over a period of years by IRS auditors. That doesn't speak to the facts of this case in my view. But where else do I have to communicate my frustration? I can't get anybody from the IRS on the phone ever. I don't try. OK. Thank you, Your Honor. If I may, Your Honor, I heard what the court said. And I appreciate these questions. Because actually, I do think they point me right to a couple of points that I want to make. Let me talk to you, Judge, what you just spoke about, about the rules. Nobody objects to regulations. But the objection here is the regulations don't tell you what to do specifically. There is no regulation that says you must have an entire agreement in your documentation. It doesn't exist. No, but the regulation, for instance, just taking the one example, there are three issues. But the one is that the county should give you a letter. And this letter is everybody's familiar with it. We get them every year and store them in our files to support our deductions. And here, this is a major deduction. And obviously, Brooks went about spending some money to get an appraisal and that type of thing. Why in the world wouldn't that document be around or be solicited or asked for? Because it confirms important facts about the deduction. And a donation of this kind could well include forbearance on taxes. Or it could very well include some agreement about zoning the remaining property or subdividing or whatever. We don't know those things. And that's exactly what that type of disclosure would be. And so without that documentation, you're requiring the IRS to pursue it and examine it. And, of course, they ended up in suit. And we find that there's testimony that there was none. But that wasn't in the documentation. Your Honor, I believe the belief was a conservation deed serves that purpose, especially when it uses the word donate. It is donated. There's no question it's donated. And it uses $10, which was, as everybody knows, that would be $1 or $10 or $5. There is an opening there for whatever consideration is discussed in the side. The deed is what's recorded. And the IRS says, well, if it was an integrated deed, which would preclude these other agreements, that might do something. But what the regulation says is we want that letter. That's the better way to do it. And in something as big as this, as meaningful to the taxpayer, I found it so hard to understand why that document isn't in the records. Well, here's the danger, Your Honor, that I see that's pervasive through all of this. In each of these instances, there is not a regulation that specifically says it must take A, B, C, D, or. It does. It says you have to have a letter for donations of $250 or more. And it tells you exactly what the letter has to say. It does not tell you the form. And as a matter of fact, the congressional history was it could be a postcard. Somehow I get a stack of these every year. And they all look the same. People have done that. But that is not what Congress has amended this law 30 times since it was passed. It has never added that in. The danger is with the IRS heightened enforcement in this area, how does anybody ever feel comfortable? Well, your point is, I mean, I have some of the same concerns that Judge Niemeyer does. And you're saying, well, we didn't know what we were supposed to do, okay? But wouldn't most taxpayers in your situation have professional assistance at hand in the form of either a lawyer or an accountant or people who deal with these kind of donations on a more or less regular basis? I mean, you're not facing the IRS unaided. We did. And our professionals felt they'd done it right. I'm suggesting to you that most taxpayers in the situation would have some sort of legal counsel or an accountant or somebody who had some basis, who had some experience with these sorts of transactions, which are probably more complicated than they need to be. But, you know, I mean, even your ordinary taxpayer can't fill out their own returns. Everybody has professional assistance in an accounting firm. And particularly with something like this, you would think that the taxpayer wasn't left adrift by himself, but had professional advice at hand. They did and thought they were correct, Your Honor. They had professional counsel. And if there were omissions by the professionals, you're stuck with that, aren't you? They didn't believe it was omissions. We don't either, Your Honor, and it was 2007. I mean, we hold parties responsible for their representational choices. We do. May I make one more point, Your Honor? I know I'm past my time, but very briefly. And I think it's an important point because it's happened since the briefing started. Congress has stepped in and has addressed this area. It has revised the conservation easement code. And what it has done is it has limited the conservation easements you can take, the amount, to 2.5 times your basis. Its purpose in doing what it has not done is gone in and adopted these hyper-technical regulations. And the reason it chose to do that that way, I believe, is it managed to take out the financial incentive that created all the fraud without going to this hyper-technical, overdoing rules that nobody really knows what they are. You keep saying that. It's a little off-putting when we're having a discussion. You can criticize the regulation, but this regulation says, no deduction shall be allowed under subsection A in the amount of $250,000 or more unless supported by a contemporaneous written acknowledgement of the contribution by the donor organization that meets the qualifications of B. And B has three specified items that have to be included. And I don't understand why that's hyper-technical. That is a requirement, a reasonable requirement. They want to have the net amount, not some exchange. And this eliminates the possibility of these collateral arrangements, which could be a subterfuge. I don't think that's hyper-technical, is it? Not that part, Your Honor. Well, that's one of the big issues in the case. No, up until a degree. The degree is, we believe we supply that with the donation deed. There's nothing to indicate that here. We don't see it. It's a written acknowledgement by the county that it has received these things, and it says it's received them for no consideration. That's what the word donate means. It satisfies all of those criteria. The hyper-technicality that I'm talking about is the IRS has now come and said it doesn't count. What I'm saying is maybe the proper forum to address some of these issues of hyper-technicality is with the Congress, rather than asking us to essentially tackle that particular problem here, because maybe this is a problem that calls forth a legislative redress or legislative attention, and I'm sure it has received a good bit. But, you know, you're caught with this tension between the IRS being over-aggressive on the one hand and taxpayers being very abusive of the deduction on the other, and you've got this tension. And we can resolve the tension when the case is clearly on one side or the other. As I'm frank to say, counsel, I think your case lands on the side of the abuse. But there is the tension, and it's something that Congress has got to pay continuing attention to in trying to find out if the questions are. I don't think we can just sit up here and go through the Internal Revenue Code and say this is impossible to understand because we'd never finish. It would be a lifetime occupation. But at any rate, I'm sure I'm speaking for the panel when we say we really appreciate your argument. We want to thank you, and thank you as well for being here. We're happy to be given the chance to sort of explore some of the issues that this case raises, and we'd kind of like to come down and say hi to you. And I thank you for your questions and attention to it.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.